**SO ORDERED.**

**SIGNED this 3rd day of July, 2013.**



_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

L & T MACHINING, INC.,      Case No. 11-11045
     Chapter 11
   Debtor.

## MEMORANDUM OPINION

Even after confirmation, but before a case is closed, a chapter 11 case must be dismissed or converted, depending on what is in the creditors' best interests, if a party in interest can show that the reorganized debtor has committed a material default under the plan or if the debtor has failed to make tax payments.[1] Crucial to determining what is in the creditors' best interests is whether conversion would serve any purpose -- in other words, are there any assets for the chapter 7 trustee to

---

[1] 11 U.S.C. § 1112(b)(1) and (b)(4)(I) and (N).

1

administer? While a motion to convert is pending, a final decree closing the bankruptcy case should not be entered.[2]

L&T Machining, Inc. has operated under a confirmed plan since December 2011.[3] It has materially defaulted on various plan obligations and has additionally failed to comply with reporting and quarterly fee requirements. While it has begun payment under the plan, some creditors have received nothing, while others have been paid in full. Its most insistent creditor, the Internal Revenue Service, has been partially paid, but the debtor freely admits its continuing state of default on that creditor's obligation. And, though L&T remains in operation, it has been inconsistent, at best, in maintaining insurance on its property, filing of tax returns, and in making tax deposits. Its justifications for these defaults are ones typical to failing reorganizations: two of L&T's principal customers filed their own chapter 11 cases and it is experiencing cash flow problems. Thus, there is no alternative to dismissal for cause under §1112(b)(1) unless the creditors would benefit from conversion.[4]

L&T's plan provided that its assets would vest in the debtor at confirmation as § 1141(b) provides.[5] Because conversion from chapter 11 to chapter 7 does not vest those assets back in the chapter 7 estate, converting the case has no purpose.

---

[2] Fed. R. Bankr. P. 3022.
[3] Dkt. 180.
[4] *See* § 1112(b)(2)(B) (requiring a showing that debtor's acts or omissions are reasonably justified and will be cured within a reasonable period of time to avoid mandatory dismissal or conversion).
[5] See 11 U.S.C. § 1141(b) (A provision in the plan or confirmation order overrides the default rule that property of the estate vests in the debtor upon confirmation.) Here, L&T's plan provides expressly that the property of the estate revests in debtor upon confirmation. Dkt. 161, p. 8, ¶14.

2

While an orderly liquidation of the reorganized debtor would undoubtedly be the most efficient means of paying its creditors, the Bankruptcy Code does not return those assets to the trustee who, accordingly, would have nothing to administer. As the Court has only two choices, conversion or dismissal, the case must be dismissed and the motion for final decree denied as moot.[6]

Pursuant to § 1112(b)(3), the current motions to convert or dismiss must be decided within 15 days of the evidentiary hearing, or July 3, 2013.

Facts[7]

L&T Machining, Inc. is a manufacturer of wing surfaces for jet aircraft. It principally serves as a supplier of parts to Spirit Aviation (formerly Boeing), Beech Aircraft (formerly Hawker Beechcraft), and Eclipse Aviation Corporation (n/k/a AE Liquidation, Inc., et al.). Michael Liu is its president. In that capacity, he manages not only the money, but is also responsible for sales and for supervising manufacturing and a workforce of ten people. The parts it makes are airplane specific -- only Beech would buy Beech surfaces from L&T.[8] The parts are not

---

[6] An evidentiary hearing was held June 18, 2013 on the Internal Revenue Service's Motion to Convert Case, Dkt. 217; the U.S. Trustee's Motion to Convert or Dismiss Case, Dkt. 243; and the Debtor's Second Motion for Final Decree, Dkt. 244. L&T Machining appears by its attorney David P. Eron. The U.S. Trustee appears by attorney Joyce Owen. The IRS appears by Asst. U.S. Attorney Robin Moore. Creditor CIT Technology Financing Services, Inc. appears by its attorney J. Michael Kennalley.

[7] In addition to the facts established at the evidentiary hearing, the final pretrial order in this matter contains several stipulations regarding the plan payments, plan payment defaults, unfiled tax returns, and unpaid post-petition and post-confirmation taxes. *See* Dkt. 251, pp. 2-3.

[8] Liu explained that the parts inventory it manufactures for these customers are made from part templates or patterns that have been developed by L&T using tooling and CNC programs. Those patterns or templates cannot be sold to other

3

fungible in any sense. Liu traces the company's difficulties to the bankruptcy of Eclipse Aviation.[9] According to L&T's schedules, the company still held a sizeable amount of unsold Eclipse inventory when it filed this case, a scheduled value of $450,000. Similarly, the company held $525,000 of Hawker Beechcraft work in process and inventory. Hawker did not file bankruptcy until the spring of 2012.[10] The company also held $190,000 of Spirit/Boeing work in process and inventory at filing. This inventory had been produced, but L&T couldn't ship it until receiving the customers' delivery demands. Liu says that while Eclipse and Beechcraft have emerged from chapter 11, they decline to do business with L&T because it filed bankruptcy and they will not accept inventory until L&T emerges from bankruptcy (but not if L&T is in chapter 7). Liu also believes that none of these customers will buy any of this inventory or work product from a chapter 7 trustee attempting to liquidate assets.

L&T's plan was confirmed on December 28, 2011. Once confirmed, the company immediately encountered difficulties living up to its obligations. It managed to settle or pay some classes of debt (Class 3 Sedgwick County property taxes and Class 8 machinery claim), but has fallen far behind on its obligations to

---

companies; each company that manufactures parts has its own patterns or templates specific to the customer. Other than scrap value, the parts inventories for these customers have no marketable value outside of the specific customer.

[9] I take judicial notice that Eclipse Aviation Corporation filed a chapter 11 case on November 25, 2008 and the case was converted to chapter 7 for cause on March 5, 2009 after a sale of Eclipse's assets fell through. *In re Eclipse Aviation Corporation, et al. (n/k/a AE Liquidation, Inc.),* Case No. 08-13031 (Bankr. D. Del.). *See* Dkt. 507 (Motion to Convert) and 535 (Order Converting Case to Chapter 7).

[10] I take judicial notice that Hawker Beechcraft, Inc. filed a chapter 11 case on May 3, 2012. *In re Hawker Beechcraft, Inc.,* Case No. 12-11873 (Bankr. S.D. N.Y.).

4

the IRS for prepetition claims as well as on its ongoing obligations to pay withholding and unemployment taxes.[11] It began paying some plan payments in January of 2012, but has made no payments since October of 2012.[12] Liu attributes this to lack of cash, a common chapter 11 complaint. It made no first quarter tax deposit in 2013 and it has yet to file its 2011 Form 1120 return.[13] L&T has also failed to pay any lease payments to CIT on certain computer-aided equipment despite the fact that it continues to use the equipment. CIT has received no payments since L&T filed this bankruptcy. Liu testified that the company seeks to retain the equipment and to pay the claim, but again, cash flow problems prevent it from doing so. Like the Class 5 CIT claim, L&T has made no payments to Class 6 ($67,011) and Class 9 ($27,434) secured creditors of equipment used in its operations.

L&T is also behind on its reporting and fee obligations to the United States Trustee.[14] Its casualty, workers compensation, and general liability insurance have all been cancelled for nonpayment of premiums, though Liu testified that he reinstated the policies last month.

Liu anticipates that L&T will receive new orders from old and new customers. He stated that he had a bid conference meeting with Eclipse about new business the day after this evidentiary hearing and repeatedly emphasized that he

---

[11] As of April 2013, debtor owed $21,553 in withholding and unemployment taxes for various quarters in the years 2011 and 2012. *See* Dkt. 251, p. 3, ¶ D.
[12] L&T was six (6) plan payments ($4,220/month) behind to the IRS totaling $25,320 as of May 2, 2013. Dkt. 241, p. 3, ¶ G.
[13] Dkt. 251, p. 3, ¶ D.
[14] L & T last filed its monthly reports during the third quarter of 2012 and is two quarters delinquent on fees post-confirmation.

5

and the company are better suited to complete and sell the work in progress and inventory than a trustee would be. Liu concedes that the ability of L&T to pay creditors hinges on its ability to sell the existing parts inventory to Hawker Beechcraft, Eclipse and Tect Aerospace and to generate new business.[15]

Analysis

The three issues to be determined here are (1) whether the debtor should receive a final decree;[16] (2) whether there are grounds to dismiss or convert the case for cause;[17] and (3) if there are, whether conversion or dismissal is the appropriate remedy. The first two issues are easily resolved. Bankruptcy Rule 3022 requires the court to issue a final decree "after an estate is fully administered."[18] As the Advisory Committee Notes to that rule state, whether the debtor should receive a final decree does not depend solely on whether "the payments required by the plan have not been completed."[19] Instead, courts rely on a series of factors to determine whether and when the decree should be entered. One of those factors is whether all motions, contested matters, and adversary proceedings in the case have been resolved.[20] Here, the motions to convert or dismiss remain pending, suggesting that the case has not been fully administered. Thus the debtor is not entitled to a final decree and that motion must be denied.

---

[15] According to Liu, since Hawker Beechcraft emerged from bankruptcy it is outsourcing most of its parts manufacturing so there are additional, new business opportunities.
[16] Dkt. 244.
[17] Dkt. 217 and 243.
[18] Fed. R. Bankr. P. 3022.
[19] *See* Adv. Comm. Notes, Fed. R. Bankr. P. 3022.
[20] *In re Union Home and Indus. Inc.*, 375 B.R. 912 (10th Cir. B.A.P. 2007).

6

Similarly straightforward is determining whether there are grounds to dismiss or convert the case for cause under §1112(b)(1). Where cause is shown, the court *must* dismiss or convert the case except as set out in §1112(b)(2).[21] No party disputes that the debtor has missed numerous payments and otherwise violated material plan terms. Section 1112(b)(4) enumerates sixteen (16) non-exclusive examples of cause to dismiss a chapter 11 case. Those most relevant here are failing to maintain appropriate insurance, §1112(b)(4)(C); failing to satisfy any reporting requirement imposed by the code, §1112(b)(4)(F); failing to pay post-petition taxes, §1112(b)(4)(I); failing to pay quarterly United States Trustee's fees, §1112(b)(4)(K);[22] and material default with respect to a confirmed plan, §1112(b)(4)(N). In short, this debtor has committed five of the sixteen types of cause for conversion or dismissal.

But, as debtor points out, §1112(b)(2) provides that the court *may* not convert a case to chapter 7 or dismiss it, even where cause is shown, if there are "unusual circumstances" that establish it is not in the best interest of creditors to convert or dismiss the chapter 11 case.[23] L&T argues that several such unusual circumstances

---

[21] *In re Gateway Access Solutions, Inc.,* 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (BAPCPA amendments to § 1112(b)(1) limits court's discretion to deny a motion to convert or dismiss for cause; if cause is established, conversion or dismissal is mandatory unless debtor falls within the "unusual circumstances" exception in subsection (b)(2).).
[22] *See* 28 U.S.C. §1930(a)(6).
[23] *In re Gateway Access Solutions, Inc.,* 374 B.R. 556, 560 (The § 1112(b)(2) exception, if applicable, gives the court discretion to disallow conversion or dismissal of chapter 11 case where conversion or dismissal is not in the best interests of creditors.).

appear here.[24] First, the debtor's property is, as noted above, specialty property that can only be used for installation in certain aircraft made by certain manufacturers with whom L&T has close business relationships. Second, the debtor's defaults stem from the bankruptcy of its two largest customers, Eclipse and Hawker Beechcraft. These arguments are facially attractive but neither withstands heavier scrutiny.[25]

Assuming that the wing surfaces are aircraft-specific, L&T ignores the possibility that a trustee might sell the entire business or all of its assets to one of L&T's competitors, thus benefitting the unsecured creditors. And, L&T has operated under a confirmed plan for over a year without selling these components to these customers. That a reorganized debtor might better sell estate assets in the ordinary course than a trustee would is hardly news. Neither is the prepetition bankruptcy of a reorganized debtor's customer. This, like a lack of cash, is something that is unfortunate, but certainly not unexpected or "unusual" and should not bar dismissal or conversion of a case when a creditor has successfully demonstrated cause under §1112(b)(4).[26] I conclude that such cause exists here, no

---

[24] Section 1112(b) does not define "unusual circumstances." *Gateway Access Solutions, Inc.* at 560.
[25] *Id.* at 561 (If cause for conversion or dismissal is established, burden shifts to debtor to prove that it falls within "unusual circumstances" exception to mandatory conversion or dismissal.).
[26] *See In re Sydnor,* 431 B.R. 584, 591 (Bankr. D. Md. 2010) (Unusual circumstances cannot be solely facts that are common to chapter 11 cases generally.); *In re Miell,* 419 B.R. 357, 367 (Bankr. N.D. Iowa 2009) (Unusual circumstances contemplates conditions that are not common in chapter 11 cases); *In re Keeley and Grabanski Land Partnership,* 460 B.R. 520, 536-37 (Bankr. D. N.D. 2011) (same; the import of the unusual circumstances exception is that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding); *In re Park,* 436 B.R. 811 (Bankr. W.D. Va. 2010) (same; court order to pay sale proceeds to creditor did not prevent debtor from paying postpetition real estate taxes from alternative

8

unusual circumstances are shown, and, accordingly, that I am required to dismiss this case unless the best interest of the creditors would be better served by converting it to chapter 7.

The Court also observes that § 1112(b)(2) is written in the conjunctive.[27] In addition to requiring "unusual circumstances" the debtor must also establish that there is a reasonable justification for the debtor's failures or omissions that constitute "cause" and those failures or omissions will be cured within a reasonable period of time.[28] The debtor's evidence produced at the hearing focused on this second prong, § 1112(b)(2)(B), but did not persuade the Court that L&T's defaults and omissions were reasonably justified or could be cured in a reasonable period of time. L&T's prospects to sell the existing parts inventory to its major customers or to procure new purchase orders was speculative at best. It acknowledged that while in bankruptcy, these customers would not buy the parts inventory nor engage in further business. It was abundantly clear that L&T simply could not fund all of its plan and tax obligations and the prospects for doing so in the future were doubtful. Given the length of time that L&T has been in default of its plan obligations, its inability to sell the inventory, and the lack of any cash flow statements or

---

income source; mere fact that debtor was unable to find alternate income source to pay taxes was not unusual circumstance); *In re ARS Analytical L.L.C.,* 433 B.R. 848 (Bankr. D. N.M. 2010) (debtor's contract dispute with creditor was not "unusual circumstance"); *Gateway Access Solutions, Inc.,* 374 B.R. at 564 (Unusual circumstances under § 1112(b)(2) should be presently existing conditions or facts, not past events; alleged prepetition mismanagement of corporation was not unusual circumstance.).

[27] *See In re Ashley Oaks Development Corp.,* 458 B.R. 280, 286 (Bankr. D. S.C. 2011).
[28] Section 1112(b)(2)(B).

projections to demonstrate that it could effectuate its plan and meet all of its obligations as a debtor in possession, the Court concludes that debtor's defaults were neither reasonably justified nor capable of being cured within a reasonable time.[29] L&T will not be permitted to wallow in chapter 11 indefinitely on the hope that its business will eventually turn around.[30]

Many courts determine whether to convert or dismiss a reorganization case by applying a ten factor test that has been expressed as follows:

> (1) whether some creditors received preferential payments, whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a "single asset,"; (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; *(9) whether a plan has been confirmed and whether any property remains in the estate to be administered*; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.[31]

Many of the factors are not present in this case. There do not appear to have been preferences paid, nor does there appear to have been bad conduct by the debtor. Of

---

[29] *See In re Park,* 436 B.R. 811 (Bankr. W.D. Va. 2010) (Debtor's inability to come up with the funds to pay postpetition real estate taxes did not preclude dismissal of case.)

[30] *In re Keeley and Grabanski Land Partnership,* 460 B.R. at 537-38 (noting that the preservation of the business enterprise must not be at the expense of creditors).

[31] *In re Helmers*, 361 B.R. 190, 196-97 (Bankr. D. Kan. 2007) (emphasis added), quoting Alan N. Resnick and Henry J. Sommer, 7 Collier on Bankruptcy, ¶ 1112.04[6] (15th ed. Rev. 2005).

all the factors, the ninth pertaining to whether there is any remaining property to administer received the most attention from counsel and bears the most consideration here. The presence of property in the estate from which the creditors might benefit weighs heavily in favor of conversion. What remains in L&T's estate?

First, as to what the converted estate might contain, we look to the chapter 11 plan in this case. As confirmed, the plan provided that all of the assets of the chapter 11 estate would revest in the debtor at confirmation. Section 1141(b) provides for such vesting unless the court orders otherwise. Thus, the debtor, L&T, possesses all of the assets it brought to the case as well as any assets that were proceeds or products of what it brought to the case.[32] Section 348(a) outlines the effect of conversion and states that conversion of a case "constitutes an order for relief "under the new chapter, but "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief" except in circumstances not relevant here.[33] So while an order converting this case to one under chapter 7 would be an order for relief in chapter 7, the date of that order for relief would be the date of the chapter 11's commencement, April 15, 2011. What L&T owned on that date is what populated the estate under §541(a), along with its proceeds or products. Whatever part of that property remaining in the debtor's possession on the day of confirmation -- December 28, 2011, vested in the debtor under §1141(b). No Code provision "unvests" the property back to the estate. Thus, in a converted case, there would be nothing for the trustee to administer.

---

[32] *See* § 541(a)(6).
[33] §348(a).

Many courts faced with similar sets of facts have reached similar conclusions. In *In re Lacy*, for instance, a district court reversed a bankruptcy court's finding that confirmation of a debtor's plan vested property in the reorganized debtor "in trust" for the creditors.[34] Noting that the Bankruptcy Code distinguishes between property of the estate and property of the debtor, and that property of the estate vests back in the reorganized debtor at confirmation, that court concluded that there would be nothing left in a converted case for the trustee to administer.[35] In particular, the *Lacy* court rejected the idea that the converted case's trustee would step into the shoes of the reorganized debtor to implement the plan noting that § 704 only authorizes the trustee to liquidate property of the estate and distribute it according to the distribution scheme of §726. The trustee is not authorized to liquidate any other property. Because nothing in the plan or the Code provides for the return of the debtor's property to the estate, there would be nothing for the trustee to administer.[36] Other courts have concluded that the benefits of conversion in these circumstances are "illusory" at best.[37]

Other courts have reached the opposite conclusion. An example of these courts' views is found in *In re Consolidated Pioneer Mortgage Entities* where the Ninth Circuit Bankruptcy Appellate Panel dealt with a motion to convert six

---

[34] 304 B.R. 439 (D. Colo. 2004).
[35] *Id.* at 444-45.
[36] *Id.* at 446.
[37] *See In re T.S.P. Industries, Inc.*, 117 B.R. 375, 378 (Bankr. N.D. Ill. 1990); *In re K&M Printing, Inc.*, 210 B.R. 583, 585 (Bankr. D. Ariz. 1997). *See also In re T.S. Note, Inc.*, 140 B.R. 812, 814 (Bankr. D. Kan. 1992) (holding that the post-conversion estate would only amount to non-administered assets from the preconfirmation estate, but not addressing the vesting of assets).

12

consolidated cases in which a liquidating entity had been formed under the confirmed plan to liquidate and distribute the assets of the debtors.[38] When the liquidating entity refused to render an accounting, creditors moved to convert the cases. The BAP concluded that the liquidating entity functioned as a "trust" that had fiduciary duties to the creditors that it had breached.[39] The Ninth Circuit Court of Appeals affirmed, noting that the language and purpose of the plan demonstrated that the assets formerly reposed in the liquidating entity were revested in the post-conversion estate.[40] Other cases have concluded that if revesting in the estate did not occur, the express authority to convert a confirmed chapter 11 case in §1112(b) would be meaningless.[41]

The former cases have the better view -- there simply is no provision in the Code to effectuate the revesting of the reorganized debtor's property in the conversion estate. It is difficult to fathom why, in a statute as finely-wrought as the Bankruptcy Code, the appropriation of the debtor's property into the estate at filing and the revesting of that property in the debtor at confirmation are provided for specifically, but the appropriation of the debtor's property by a post-conversion

---

[38] *Pioneer Liquidating Corp. v. U.S. Trustee (In re Consolidated Pioneer Mortgage Entities)*, 248 B.R. 368 (9th Cir. BAP 2000), *aff'd,* 264 F.3d 803 (9th Cir.2001).
[39] 248 B.R. at 378.
[40] 264 F.3d at 807-08.
[41] *See In re Calania Corp.*, 188 B.R. 41, 43 (Bankr. M.D. Fla. 1995)("Utterly pointless" to provide for conversion if post-conversion estate doesn't succeed to pre-conversion property) and *In re Midway, Inc.,* 166 B.R. 585, 590 (Bankr. D.N.J. 1994) (Literal reading of Code sections could lead to the conclusion that there is no estate to distribute when a case is converted from a post-confirmation chapter 11 to a chapter 7.).

13

trustee can only be construed by negative implication. As one court has recently stated --

> While I believe the better and more practical approach is to hold that at least property of the estate at the time of confirmation of a plan vests in a chapter 7 trustee upon post-confirmation conversion, it is not my role to legislate. When a statute is unambiguous the court must interpret the statute " 'according to its terms.' "[42]

In *In re Sundale, Ltd.*, that court concluded that, absent an express provision in the plan or confirmation order to the contrary, conversion in a confirmed chapter 11 case does not revest the debtor's assets in the estate.[43] In *Sundale*, however, the court converted the matter anyway in the hope that a chapter 7 trustee could more objectively resolve pending litigation with a creditor than had the debtor's management. The current case before me does not present a similar situation.

I agree with those courts that while it might be handy for the property of a reorganized debtor to revest in the chapter 7 estate post-conversion, there is no legal provision for that where the property has previously vested in the debtor at confirmation in keeping with the provisions of the plan. While cause exists in this case, converting it to chapter 7 would be futile.

That leaves me with only one option -- dismissal. As noted above, the court's duty to convert or dismiss under §1112(b)(1) is mandatory once someone demonstrates that there is cause. I question whether dismissal creates a reality that is any different from that which now exists, anyway. Operating under a

---

[42] *In re Sundale, Ltd.*, 471 B.R. 300, 306 (Bankr. S.D. Fla. 2012), interior citations omitted.
[43] *Id.*

confirmed plan, but unprotected by the automatic stay,[44] this debtor is subject to the plethora of remedies its creditors could wield to enforce their claims under the confirmed plan whether the case is dismissed or not. Even now, the IRS could exercise any of its enforcement remedies without this Court's review or order. Likewise, any other creditor dealt with in the plan may enforce the plan like any other contract in a court of general jurisdiction. But as the moving parties have demonstrated cause, L&T has failed to establish the §1112(b)(2) exception, and as no purpose would be served by conversion, the case must be DISMISSED and I so direct.

Conclusion

Debtor's Second Motion for Final Decree (Dkt. 244) is DENIED. The IRS's Motion to Convert Case (Dkt. 217) is DENIED. The U.S. Trustee's Motion to Convert or Dismiss (Dkt. 219) is GRANTED. This chapter 11 case is hereby DISMISSED.

###

---

[44] *See* § 362(c)(1) (stay of acts against property of the estate expires when property is no longer property of the estate).